UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                             Hon. Gerald E. Rosen

-vs-

                             No. 09-CR-20559-01

D-1   JERRY M. RIVERS,

                             Sentencing Date: June 30, 2010

        Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM
## AS TO DEFENDANT JERRY M. RIVERS

       The government submits the following memorandum in connection with the

sentencing of defendant Jerry M. Rivers on June 30, 2010.  The government

recommends that Mr. Rivers be sentenced to a term in prison not more than 15 to

18 months, along with a two year period of supervised release.  As part of this

recommendation, the government has separately moved for a downward departure

from the applicable sentencing guidelines range of imprisonment for Mr. Rivers

because of his substantial assistance in the investigation and prosecution of others.

The reasons for this recommendation are set forth below.

## DISCUSSION

### I.  Statutory Factors

As the Court is aware, Title 18, United States Code, Section 3553(a) requires the Court to impose a sentence which is sufficient, but not greater than necessary to comply with the purposes set forth in that section.  The government will summarize the statutory factors most applicable to this case.

#### A.  The Nature and Circumstances of the Offense

Mr. Rivers's plea agreement contains a statement of facts applicable to him. In summary, Mr. Rivers, a Detroit police officer, participated in a bribery scheme with DeDan Milton, the former mayor of Detroit's executive assistant, and Kandia Milton, the former mayor's liaison to city council.  In 2006 and 2007, in exchange for $50,000, Mr. Rivers helped a non-profit entity purchase a 160-acre campsite called Camp Brighton/Detroit Recreation Camp from the City of Detroit.  The Miltons assisted Mr. Rivers using their positions in the city administration to advocate that the administration and city council approve the sale of Camp Brighton to the non-profit entity for $3.5 million.  After the sale closed, the $50,000 payment from the non-profit entity was divided roughly as follows: $20,000 to Mr. Rivers; $20,000 to Kandia Milton; and $10,000 to DeDan Milton.

They recruited a middleman to accept the money from the non-profit entity because they did not want the money to go directly to them.

Although not part of his guilty plea, Mr. Rivers also advised the government of another bribery scheme.  In 2006, Mr. Rivers asked the Miltons to help him with the sale of the City of Detroit's 8th Precinct police station to a developer.  In February 2007, after the sale closed, Mr. Rivers gave the Miltons each $6,250 in cash for their help, keeping $12,500 for himself.

### B.  History and Characteristics of the Defendant

Mr. Rivers had no criminal record before he pled guilty to the offense described above.  Since being contacted by law enforcement, he has accepted responsibility for his role in the misconduct and appears genuinely remorseful about his participation.

### C.  Seriousness of the Offense, Promoting Respect for the Law, Providing Just Punishment, and Affording Adequate Deterrence

Mr. Rivers's offense is serious.  As a police officer, he did not have the authority or capacity to undertake the official actions necessary for the sale of Camp Brighton.  As a result, the money he received from the non-profit entity was not, on its own, a bribe.  The transaction became a bribe when he shared a portion of the proceeds with the Miltons in exchange for their official assistance in

facilitating the sale.  The fact that the Miltons were Mr. Rivers's longtime friends did not legitimize the deal.  To the contrary, the three members of the scheme showed their guilty knowledge by taking a number of steps to hide their participation in the sale, including hiring a middleman to accept the non-profit entity's check, then breaking up the payments into multiple checks to avoid currency transaction reports to the IRS.[1]

Just as Mr. Rivers knew he could not use his position as a police officer to accept money to help someone avoid criminal charges, so too he knew the Miltons could not accept money from him in exchange for their official assistance in the sale of Camp Brighton.  In paying the Miltons, Mr. Rivers participated in an unfortunate pattern of behavior that corrupts the functioning of city government.  There is a need for a sentence that is sufficient to deter others from committing similar misconduct.  In the case of Mr. Rivers, however, the need for such deterrence must be weighed against the importance of obtaining the cooperation of persons on the inside, like him, without which it would be impossible to hold all

---

[1] It should be noted, however, that the government and the probation department have not obtained reliable information that Camp Brighton and the 8th Precinct police station could have been sold for higher prices if not for the bribes. As a result, the government cannot prove by a preponderance of the evidence that the city suffered an actual financial loss from these sales, except that those portions of the commissions illegally diverted to the Miltons could have been added to the purchase price of the properties.

guilty parties accountable, especially the officials who took the money in exchange for their official assistance.

### D.    Kinds of Sentences Contemplated by the Sentencing Guidelines

As part of Mr. Rivers's plea agreement, the parties agreed that the correct calculation of Mr. Rivers's sentencing guidelines range of imprisonment is 30 to 37 months.  The probation department concurs with this calculation.

## II.    Motion for Downward Departure for Substantial Assistance

In a motion filed March 8, 2010, the government requested that the Court grant a downward departure from Mr. Rivers's guidelines range of imprisonment because of his substantial assistance in the successful prosecution of others.  The government will summarize the main points of that motion, here.

After FBI agents approached Mr. Rivers at his workplace, he agreed to speak with them.  As a police officer, he knew he had the right to remain silent and to have an attorney present.  He did not invoke these rights, but instead agreed to talk with the agents.  During the interview, he acknowledged the basic contours of the bribery scheme involving the sale of Camp Brighton.  He must have recognized the potential ramifications of his admissions – the end of his law enforcement career and his clean record – yet he spoke with the federal agents.

Mr. Rivers's cooperation was important in obtaining the convictions of his co-defendants.  That cooperation was surely difficult for him.  Not only did it mean the end of his police career, but it also meant implicating persons close to him.  Unlike, for example, Rayford Jackson, the Synagro consultant who defiantly told the news media he would never cooperate with the government, Mr. Rivers accepted responsibility for his own misconduct and agreed to answer any questions put to him.  His sentence should reflect the difference between his attitude and contrition and that of a defendant like Rayford Jackson.  His sentence also should be lower than that of his co-defendant DeDan Milton who did not similarly provide substantial assistance in the government's investigation and prosecution of others.

Accordingly, the government requests that the Court depart downward to reduce Mr. Rivers's sentencing guidelines range of imprisonment to a range not more than 15 to 18 months.

**III.  Avoiding Unwarranted Sentence Disparities
Among Similarly Situated Defendants**

In considering the appropriateness of the government's recommended sentence, the Court must seek to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar crimes.  In

this regard, there are two categories of defendants to evaluate: Mr. Rivers's co-defendants Kandia Milton and DeDan Milton, and similarly situated defendants in other cases. Each will be described, below.

### A.   Co-Defendants

There are a number of factors distinguishing Mr. Rivers's potential sentence from that of his co-defendants. First, the guidelines range of imprisonment for the Miltons is 37 to 46 months, two levels higher than for Mr. Rivers because they were public officials.[2] Moreover, unlike DeDan Milton, Mr. Rivers qualifies for a downward departure from his guidelines range because of his substantial assistance in the investigation and prosecution of others. As described above, Mr. Rivers immediately admitted his guilt when confronted by federal agents and agreed to cooperate soon thereafter. DeDan Milton, by contrast, was approached by law enforcement agents, but declined to accept responsibility for his role in the offenses until after a federal grand jury indicted him on five counts of bribery and extortion. Kandia Milton's cooperation is not yet complete, so it is difficult to compare his potential sentence with Mr. Rivers at this time.

---

[2] It should be noted, however, that Mr. Rivers obtained the most money from the sales of Camp Brighton and the 8th Precinct police station, receiving $32,000, while Kandia Milton received $25,250, and DeDan Milton received $16,250.

**B.**   **Similarly Situated Defendants**

The Court also should consider other similarly situated defendants in this judicial district.  While there is not a substantial pool of defendants from which to compare Mr. Rivers's conduct, the government's recent prosecutions of local corruption are instructive.  On the upper end of the sentences handed out in these prosecutions is Rayford Jackson, who was sentenced to 60 months in prison, followed by Monica Conyers, who received a 37 month sentence.  The cooperating defendants in these cases have fared much better, receiving sentences ranging from 18 months for William Lattimore, a Southfield city council member; 14 months for Efstathios Louis Pavledes, the former director of Cobo Civic Center; to 11 months for James Rosendall, a Synagro executive who engaged in extensive proactive cooperation.  One cooperating defendant, Karl Kado, a Cobo vendor, received a probationary sentence in part because the sentencing judge concluded he had been pressured to pay bribes and otherwise had led an exemplary life.

In light of these recent sentences, a range of imprisonment of no more than 15 to 18 months for Mr. Rivers is reasonable and appropriate.

## **CONCLUSION**

Based on the foregoing, the government recommends that the Court grant the government's motion for a downward departure based on Mr. Rivers's substantial assistance and sentence him to a term of prison not more than 15 to 18 months, followed by two years of supervised release.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney


s/MARK CHUTKOW                           s/R. MICHAEL BULLOTTA
Assistant United States Attorney     Assistant United States Attorney


Dated:  June 28, 2010

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2010, I electronically filed the foregoing

document with the Clerk of the Court using the ECF system which will send

notification of such filing to the following:

Sheldon Halpern PC
26339 Woodward Ave
Huntington Woods, MI  48070
*Attorney for Jerry Rivers*

s/MARK CHUTKOW
Assistant U. S. Attorney

Dated:  June 28, 2010

10